**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Anthony Mall, | No. CV-26-00263-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Wells Fargo Bank NA, | |
| Defendant. | |

Pending before this Court is Defendant's motion to dismiss.  In short summary, Plaintiff brings this case over the non-judicial foreclosure/Trustee sale of his residence.

## I.     Factual Background

Plaintiff alleges that Defendant gave him a forbearance on his loan due to COVID-19.  Specifically, Plaintiff alleges he had a forbearance from July 29, 2020 to April 5, 2022.  (Doc. 11 at 7).  Plaintiff further alleges that Defendant issued a notice of default to him on January 28, 2021, while his loan was in forbearance.  (*Id*.).  Plaintiff also claims that this notice of default accelerated the loan.  (Doc. 18 at 4).  Plaintiff states that on September 12, 2023, the Trustee sale went forward based on the January 28, 2021 notice of default.  (Doc. 11 at 9).  Plaintiff claims this notice of default was inadequate notice because it was during the forbearance period.

## II.     Motion to Dismiss

The amended complaint alleges three causes of action: 1) a procedural due process violation under federal law; 2) an access to the state court's claim under federal law; and

3) a request for declaratory and injunctive relief to unwind the Trustee sale of the residence.[1] Upon screening, this Court dismissed Count II. (Doc. 12 at 4). Defendant now moves to dismiss Count I and Count III. (Doc. 17).

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint will be dismissed for failure to state a claim if it lacks either "a cognizable legal theory or . . . sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

"All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, the court need not accept legal conclusions couched as factual allegations, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–80.

### A. Count I

In Count I, Plaintiff alleges a 42 U.S.C § 1983 procedural due process violation.

> [P]rocedural due process requires that a party have an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). Due process requires notice that is reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections. *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). It also requires "a fair trial in a fair tribunal." *In re Murchison,* 349 U.S. 133 (1955); *United States v. Superior Court,* 144 Ariz. 265, 280, 697 P.2d 658,

---

[1] In response to the motion to dismiss, Plaintiff argues violations of the Uniform Commercial Code ("UCC"). The Court has not considered those arguments because a claim under the UCC is not in the amended complaint. For this same reason, the Court did not consider Plaintiff's 42 U.S.C. § 1985(3) argument raised in his response to the motion to dismiss.

673 (1985). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334 (quoting *Morrissey v. Brewer,* 408 U.S. 471 (1972)).

*Arizona Contractors Ass'n, Inc. v. Candelaria*, 534 F. Supp. 2d 1036, 1057 (D. Ariz.), *aff'd sub nom. Chicanos Por La Causa, Inc. v. Napolitano*, 544 F.3d 976 (9th Cir. 2008), *opinion amended and superseded on denial of reh'g,* 558 F.3d 856 (9th Cir. 2009) (remainder of citation omitted).

As discussed above, Plaintiff's basis for this claim is his alleged "lack of notice" of the impending sale–which is premised on Plaintiff's theory that improper or inadequate notice amounts to a lack of notice. Plaintiff also alleged in Count II that he did not have an opportunity to be heard in state court because he could not afford the bond.

In Arizona, the reason notice of a non-judicial Trustee sale is so critical to the Trustor is because if the Trustor does not obtain a temporary restraining order ("TRO") to stop the sale before it occurs, the Trustor waives all defenses to the sale and all claims regarding the sale. A.R.S. § 33–811(C) ("The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33–809 *shall waive all defenses and objections* to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. Mountain standard time on the last business day before the scheduled date of the sale.") (emphasis added).

This Court has previously held that for the provisions of A.R.S. § 33–811(C) to be triggered, the Trustor must receive notice of the impending sale. *Schrock v. Fed. Nat. Mortg. Ass'n*, No. CV 11-0567-PHX-JAT, 2011 WL 3348227, at *3 (D. Ariz. Aug. 3, 2011). Consistent with the holding that notice is required to trigger waiver under A.R.S. § 33–811(C), this Court further held that a plausible "lack of notice" claim survived the waiver provisions of A.R.S. § 33–811(C). For example, this Court has stated,

> [E]ven if a trustee's sale of the property has already taken place, a foreclosed party does not forfeit certain notice objections. *See Martenson v. RG Financing,* 2010 WL 334648, *8 (D. Ariz. 2010) (citing *Schaeffer v. Chapman,* 861 P.2d 611, 614 (Ariz. 1993)). While § 33–811(C) plainly states that a party shall waive all defenses and objections to the sale if they do not timely file for a TRO, it requires as a prerequisite that the foreclosed party

receive a proper notice of sale pursuant to A.R.S. § 33–809. Nevertheless, the "trustee's deed shall raise the presumption of compliance with the requirements of the deed of trust ... relating to the exercise of the power of sale and the sale of the trust property," including notice requirements. A.R.S. § 33–811(B).

*Schrock,* 2011 WL 3348227, at \*3.

However, *Schrock* and the cases on which it relied were decided before *Madison v. Groseth*, 279 P.3d 633 (Ariz. Ct. App. 2012) which held that even lack of notice is waived under A.R.S. § 33–811(C) if no TRO is obtained prior to the Trustee sale. *Madison*, 279 P.3d at 637 ¶ 11. The Arizona Court of Appeals reached this conclusion by holding that the Trustor (i.e., the borrower/homeowner) is not entitled to notice. *Id.* Specifically, the Arizona Court stated,

> The plain language of § 33–811(C) does not require the trustee to comply with the mailing requirements of § 33–809 for the waiver provision to apply later to the trustor. *See Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.,* 217 Ariz. 606, 608, ¶ 6, 177 P.3d 867, 869 (App. 2008) (holding court looks first to the plain language of a statute to discern legislative intent). Compliance with § 33–809 is only required to apply the waiver provision to other persons who must be given notice pursuant to that statute. A.R.S. § 33–811(C). Although § 33–809(C) mandates service on trustors, we decline to interpret the reference to § 33–809 in § 33–811(C) as requiring service on trustors as a prerequisite to application of the waiver provision; this interpretation would render the separate reference to the "trustor" in § 33–811(C) superfluous. *Devenir Assocs. v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991) ("The court must, if possible, give meaning to each clause and word in the statute or rule to avoid rendering anything superfluous, void, contradictory, or insignificant.").

*Madison v. Groseth*, 230 Ariz. 8, 12, 279 P.3d 633, 637 (Ct. App. 2012).

The Arizona Court of Appeals holding that compliance with the mailing/notice requirements of § 33–809(C) are not required to trigger waiver as to the Trustor was surprising given that § 33–811(C) says, "The trustor, its successors or assigns, and all persons <u>to whom the trustee mails a notice</u> of a sale under a trust deed pursuant to § 33–809 shall waive…" (emphasis added). Nonetheless, the Arizona Court of Appeals held that additional persons <u>who were not mailed notice</u> also waive–and those additional persons are Trustors. Thus, based on *Madison*, notice to the Trustor is not required to trigger waiver by the Trustor.

Lack of notice not surviving the waiver provisions of § 33–811(C) was a surprising

- 4 -

result because the obvious fallout is: how would a Trustor know that obtaining an injunction (or any other action) is necessary if the Trustor has no notice that a sale is imminent?  Seemingly recognizing this potential injustice, the Arizona Court of Appeals went on to hold,

> "We recognize that, under other circumstances, § 33–811(C) may apply to deprive a trustor of due process if that trustor is not given sufficient notice of the trustee's sale to obtain an injunction of the sale. *See Cook v. Losnegard,* 228 Ariz. 202, 206, ¶ 18, 265 P.3d 384, 388 (App. 2011) ("'Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'") (citation omitted).

*Madison*, 279 P.3d 633, 637 ¶ 12.

The suggestion that there was a constitutional due process violation when there is a lack of notice was another surprising[2] result because, generally, only private actors conduct Trustee's sales in a non-judicial foreclosure state like Arizona.  And the law is well established that to bring a suit under 42 U.S.C. § 1983 for a depravation of a constitutional right, the defendant must be a "state actor." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1149 (9th Cir. 2011) ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."). It is unclear who the Arizona Court of Appeals envisioned as the state actor who, in other circumstances, would owe a Trustor a duty to provide notice and an opportunity to be heard.  Perhaps that duty falls to the court in declining to enforce the waiver provisions of A.R.S. § 33–811(C) if enforcement would run afoul of due process.[3]  But nothing in the plain language of the statute suggest the court has such discretion.

---

[2]  The various illogical results that flow from *Madison* have caused at least one Judge in this district to find that the Arizona Supreme Court would reject it, and therefore, the federal courts need not follow it. *Johnson v. JPMorgan Chase Bank NA*, No. CV-13-01217-PHX-ROS, 2014 WL 11514468, at *3 (D. Ariz. Mar. 31, 2014) (noting that a federal court may reject state appellate court case law if there is convincing evidence that the state's supreme court likely would not follow it) (citations and quotations omitted). However, Defendant makes no argument in the motion to dismiss that this Court should not follow *Madison*.

[3]  In *Cook v. Losnegard*, the case cited by the Arizona Court of Appeals in *Madison*, the entity that failed to provide notice and an opportunity to be heard was the Court.

Against this law, the Court now turns to Defendant's motion to dismiss Count I, in which Defendant asserts that it is not a state actor, and therefore, Plaintiff cannot state a claim under 42 U.S.C. § 1983. As the Court stated in the screening order, there are circumstances when a private actor becomes a state actor:

> A court decides whether defendants were acting under state law by using a two-part test established in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). First, the court asks, "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Id.* Second, the court asks whether defendants "may be appropriately characterized as 'state actors.'" *Id.* State action occurs when both questions are answered in the affirmative. *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Lugar*, 457 U.S. at 937–39).
>
> "The Supreme Court has articulated four tests to determine whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted). *See Bain v. California Teachers Ass'n*, 156 F. Supp. 3d 1142, 1153 n.12 (C.D. Cal. 2015) ("Because satisfaction of one state action test can be sufficient the Court only analyzes the complained of conduct under Plaintiffs' strongest theory.").

*Kurk v. Los Rios Classified Emps. Ass'n*, 540 F. Supp. 3d 973, 980–81 (E.D. Cal. 2021), *aff'd,* No. 21-16257, 2022 WL 3645061 (9th Cir. Aug. 24, 2022).

Here, Defendant persuasively argues that it is not a state actor under the joint action test. (Doc. 17 at 5). However, Defendant fails to address the other three methods by which a private actor might be deemed to be a state actor. For example, Defendant fails to address whether a "foreclosure" (which was traditionally done by a court[4]) meets the public function test. *Perez-Morciglio v. Las Vegas Metro. Police Dep't*, 820 F. Supp. 2d 1100, 1106 (D. Nev. 2011) (*citing Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1214 (9th Cir. 2002) ("Under the public function test, a private actor performs a public function if his activities traditionally have been the State's exclusive prerogative.").[5]

---

[4] "When mortgages came to America, foreclosure was a judicial process. The shift in some states toward nonjudicial foreclosure, or a different judicial foreclosure practice, evolved as a result of attempts by the lender to reduce or eliminate the equity of redemption that had evolved in the British court system." Ghent, The Historical Origins of America's Mortgage Laws, page 20 (2012) https://www.mba.org/docs/default-source/research---riha-reports/82406_11922_riha_origins_report.pdf (last visited July 20, 2026).

[5] The Court notes that other states have rejected this theory, but *Madison* was interpreting

Thus, while the Court is not holding that Plaintiff has proven that Defendant is a state actor, the Court will not dismiss based on Defendant's argument that it is not a state actor. *Madison* at least implies that Defendant could be a state actor in some circumstance; and Defendant has failed to show that none of the circumstances listed in *Tsao* apply here. Therefore, the motion to dismiss Count I on this basis will be denied.

*Ipso facto*, an element of a procedural due process claim premised on a lack of notice is lack of notice. Because Plaintiff attempted to obtain a TRO prior to the sale, there can be no dispute that Plaintiff had actual notice. However, as noted in the screening order, Plaintiff argues that Wells Fargo granted him a COVID-based loan forbearance but nonetheless issued the notice of default during the forbearance period; and thereafter foreclosed his property. Plaintiff alleges that the notice of default during the forbearance period was inadequate notice. (Doc. 11 at 12). Defendant does not move to dismiss based on actual notice; therefore, the Court will not dismiss on this basis at this time.[6]

Alternatively, even if Plaintiff can prove a § 1983 claim, because the Trustee sale occurred in September 2023, yet this case was not filed until January 2026, it is likely barred by the statute of limitations. *See Keim v. City of Mesa*, No. CV-24-01182-PHX-SHD, 2025 WL 2444074, at *2–3 (D. Ariz. Aug. 25, 2025) (discussing a two-year statute of limitations in Arizona). However, Defendant does not argue in the motion to dismiss that this claim is barred by the statute of limitations; therefore, the Court will not dismiss on this basis at this time.

Thus, Plaintiff's lack of notice theory will be allowed to proceed. Plaintiff's lack of

---

Arizona law specifically. *See*, *e.g.*, *Apao v. Bank of New York*, 324 F.3d 1091 (9th Cir. 2003) (discussing Hawaii law); *Geist v. California Reconveyance Co.*, No. C 10-0367 CRB, 2010 WL 1999854, at *1 (N.D. Cal. May 18, 2010) (discussing California law).

[6] In other circumstances, a foreclosure cannot go forward during various kinds of loan relief. For example, 12 C.F.R. § 1024.41(g) states "(g) Prohibition on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale,…". *See also Hardin v. Wells Fargo NA*, No. CV 23-0147-PHX-CDB, 2023 WL 12155006, at *10 (D. Ariz. May 30, 2023). Neither party argued, as a matter of law, when (if ever) a set of facts could equate to inadequate notice.

an opportunity to be heard theory remains dismissed because even if the state court owed Plaintiff a duty to hear his arguments notwithstanding his inability to afford the bond, Defendant is not the actor who deprived Plaintiff of this opportunity. Therefore, Plaintiff fails to state a claim against Defendant regarding his opportunity to be heard.[7]

### B.    Count III

As stated in the screening order, Plaintiff seeks "Rule 70" relief which–as far as the Court can determine–is Plaintiff seeking a transfer of the title of the property back to Plaintiff. Defendant summarized Count III as: "Plaintiff seeks a declaration that the foreclosure and related instruments…are invalid and without legal effect, [] judgment quieting title in Plaintiff's favor, [] injunctive and equitable relief restoring possession of the Property, [an Order] to nullify or render unenforceable the State Court eviction judgment and to bar any further enforcement or collection efforts arising from that judgment." (Doc. 17 at 3). Plaintiff's response does not address these various claims for possession of the property. Defendant moves to dismiss Count III on two bases.

First, Defendant argues that any relief in this case is barred by A.R.S. § 33–811(C). Plaintiff is arguing that because of the forbearance granted to him by Defendant, he could not be foreclosed. Another court in this district has held that in those circumstances, the cause of action does not arise <u>until</u> the sale. Therefore, the waiver provisions of § 33–811(C) do not apply because Plaintiff could not have received a TRO before the sale because the cause of action did not accrue until the sale. Specifically, the court stated,

> Plaintiff had no such claims before the date of the sale. As of the day before the sale, he claimed to be under the impression that Chase had agreed to wait for reinstatement payment until July 1. He arguably had no basis on which to seek an injunction before the statutory deadline. Instead, Plaintiff's current claims did not actually arise until the sale occurred despite the alleged agreement. Plaintiff's claims are thus distinguishable from those barred in *Madison*.

*Sweet v. JPMorgan Chase Bank*, N.A., No. CV-13-01251-PHX-GMS, 2013 WL 6008548, at *3 (D. Ariz. Nov. 13, 2013). Moreover, as discussed above, Plaintiff's lack of notice claims may survive the waiver provisions of § 33–811(C).

---

[7] Plaintiff raised this theory as Count II, but the Court found in the screening order that it was just another factual predicate of a procedural due process claim.

- 8 -

For these reasons, the Court will not dismiss Count III based on A.R.S. § 33–811(C).

Second, Defendant argues that the *Rooker-Feldman* doctrine bars all equitable relief in this case.

> The *Rooker-Feldman* doctrine provides that federal district courts lack subject-matter jurisdiction to consider an appeal from the final judgment of a state court. *Noel v. Hall*, 341 F.3d 1148, 1154–55 (9th Cir. 2003). As the Ninth Circuit has noted, the doctrine is easy to apply in its routine form; a disappointed party may not seek reversal of a state court judgment by appealing to a federal district court. *Id.* at 1155. The *Rooker-Feldman* doctrine also prohibits federal district courts from considering *de facto* appeals—suits in which "the adjudication of the federal claims would undercut the state ruling." *Bianchi v. Rylaardsam*, 334 F.3d 895, 898 (9th Cir. 2003). Thus, *Rooker-Feldman* "looks to federal law to determine whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* at 901 (citation and internal quotation marks omitted). And when refusing to consider a forbidden *de facto* appeal, a federal district court must also decline "to decide any issue in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Noel*, 341 F.3d at 1159 (citation omitted). "If a federal plaintiff has brought a de facto appeal from a state court decision—alleging legal error by the state court and seeking relief from the state court's judgment—he or she is barred by *Rooker-Feldman*." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).
> The Ninth Circuit case law illustrates the distinction between a legal wrong from "an allegedly erroneous decision by a state court," which is barred by the *Rooker-Feldman* doctrine, and "an allegedly illegal act or omission by an adverse party," which is not necessarily barred. *See Searle v. Allen*, 148 F.4th 1121, 1129 (9th Cir. 2025), *cert. denied sub nom. Roshan v. Searle*, No. 25-961, 2026 WL 1052084 (U.S. Apr. 20, 2026) (citation omitted) (collecting cases). For instance, a plaintiff is not barred from suing a defendant for engaging in fraudulent conduct that led to an adverse state court judgment, *Kougasian*, 359 F.3d at 1137–38, or challenging the constitutionality of a statute that results in ongoing injury to the plaintiff, *Maldonado v. Harris*, 370 F.3d 945, 950 (9th Cir. 2004), *Searle*, 148 F.4th at 1130, or suing for an injury stemming from distinct post-judgment actions taken by a defendant, *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 995 (9th Cir. 2002).

*Harden v. Arizona*, No. CV-25-04483-PHX-JJT, 2026 WL 1758276, at *3 (D. Ariz. June 18, 2026).

Here, the state court judgment (Doc. 17-1; *EZ Homes, Inc. v. Mall*, No. 1 CA-CV 23-0755, 2024 WL 4063491 (Ariz. Ct. App., Sept. 5, 2024)) divesting Plaintiff of the property is final. Plaintiff does not dispute that this judgment is final. Instead, in response to the motion to dismiss, Plaintiff only argues that he is bringing "independent" federal claims. (Doc. 18 at 6). Thus, to the extent the various theories and remedies listed in Count

III all boil down to Plaintiff's request to have the property returned to him, all of Count III is barred under *Rooker Feldman* due to the final judgment of the state court.[8]  Therefore, Count III will be dismissed.

**III.    Conclusion**

Purportedly seeking a faster ruling, Plaintiff has filed a motion rearguing his positions.  Such filing will be stricken.

Consistent with the foregoing,

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 17) is granted as to Count III and denied as to Count I.

**IT IS FURTHER ORDERED** that Plaintiff's motion for ruling (Doc. 24) is stricken.

Dated this 24th day of July, 2026.

_____
James A. Teilborg
Senior United States District Judge

---

[8] Alternatively, Defendant is also correct that this Court could not grant any of these forms of relief against this Defendant because it is undisputed that Defendant Wells Fargo has neither title to, nor possession of, the property as of 2023. (*See* Doc. 23 at 5).  Therefore, additional parties would have to be joined.  But Plaintiff has previously sued most of these parties and may be barred by *res judicata* from naming them in this suit.  Specifically, in addition to the state court litigation, in CV 25-4693-PHX-JJT Plaintiff sued the people who purchased the property after the Trustee sale and in CV 23-2240-PHX-SMB Plaintiff sued 9 individuals or entities regarding the sale, including the trustee who conducted the sale, the Trustee's lawyer, the Maricopa County Superior Court, and the Superior Court Commissioner who presided over the state lawsuit.